UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                      Case Number 17-20544
                                              Honorable David M. Lawson

v.

JOHN CREECH,

              Defendant.

_____/

## <u>OPINION AND ORDER GRANTING IN PART GOVERNMENT'S MOTION FOR ADMISSION OF EVIDENCE UNDER EVIDENCE RULE 404(b)</u>

The grand jury charged defendant John Creech in a single count indictment with conspiring to possess with intent to distribute 100 or more grams of heroin, contrary to 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(i). The government filed a motion for a ruling allowing the admission at trial of certain "other acts" evidence that it contends forms "the *res gestae*" of the drug distribution conspiracy charged in this case, and which it also asserts is necessary to establish the defendant's intent, plan, and motive to carry out the drug distribution scheme, particularly in light of his proffered public authority defense. Since the motion was filed and argued, the defendant has withdrawn his public authority defense and will not seek a jury instruction on that defense. Nonetheless, some of the evidence the government seeks to offer is relevant to prove the elements of the charged offense. For the reasons discussed below, the motion will be granted in part and denied in part.

<p style="text-align:center">I.</p>

The government alleges that Creech conspired with Craig Todd and others to transport heroin from California so that it could be sold in Michigan. According to a complaint filed before the indictment was returned, the government believes that on May 7, 2012, Creech met Craig Todd

<p style="text-align:center">-1-</p>

at a restaurant in Los Angeles, California where they talked about selling some drugs. Two weeks later, Creech called Todd from Chicago and asked if Todd could "move some heroin." Later in May 2012, Creech went to Todd's home in Southfield, Michigan and dropped off 500 grams of heroin for Todd to sell. However, after the heroin was found to be of low quality, Creech returned to Todd's home a couple of days later and replaced it with 500 grams of higher quality heroin.

On August 14, 2012, after a traffic stop, Todd was arrested by agents of the DEA, who found around 14 kilograms of cocaine and 300 grams of heroin in his car. Todd promptly confessed to the arresting agents and then was released. On August 20 and 24, 2012, Todd appeared at the DEA offices and proffered extensive information about his drug dealing. Todd then entered into a deal with the government to become a confidential informant.

Based on motions filed in this case, it appears that Creech will present a defense that he had no intent to conspire with anyone to deliver controlled substances in 2012. Instead, he will say that he was working with a California police detective when he negotiated supposed "sham" drug deals, including the deal involving Todd.

The government moved for an order allowing the introduction of evidence (1) that during the approximate timeframe of the conspiracy as charged, and extending as far back as occasions in 2008 and 2009, on multiple prior occasions, including occasions specific to Todd, defendant "fronted" and provided drugs to Todd and other individuals on a consignment basis with the intention to later collect and receive the proceeds from the sale of those drugs; (2) about statements by defendant and efforts by defendant to collect money from Todd and others prior to the charged timeframe of the instant conspiracy for drugs that defendant had previously "fronted" and provided on consignment; (3) that in furtherance of their drug trafficking relationship and as a means of further developing trust with one another as drug co-conspirators, Creech and Todd engaged in

other drug activity, including meeting with yet other drug traffickers to whom Creech introduced Todd for the purpose of Todd obtaining drugs on a consignment basis, including a face-to-face meeting in the weeks surrounding the charged conspiracy that ultimately led to Todd's own arrest and cocaine-related drug conviction; and (4) that in 2012 the defendant was detained in custody, in a Los Angeles County jail, based on a 2010 California state drug arrest, and during a significant portion of the time that defendant was attempting to collect money from Todd, including recorded "jail calls" and "jail visits" with individuals whom the defendant solicited to help collect Todd's drug debt, and during those calls and visits the defendant discussed his underlying drug arrest, and, significantly, though vaguely, the defendant's connection to a murder for which he was later charged and convicted.

The government argues that the evidence either is part of the story of the charged offense itself, or that it is admissible under Evidence Rule 404(b) to prove the defendant's "intent, plan, or motive."

The defendant concedes that evidence of his dealings with Todd in the course of their drug selling business properly may be admitted to "provide some relevant background evidence," but he contends that (1) "[t]he jury can understand the consignment-style arrangement the government describes without hearing specifics of what Creech may have done before," (2) the "[j]urors should have no trouble understanding that Creech and Todd had a prior relationship without delving into the details of alleged prior transactions," and (3) the jury does not "need to hear that Creech and Todd met with others to set up other drug deals in order to understand the government's claim that he did so in 2012."

The defendant also concedes that "[g]iven [his] proposed defense and the overall context of the evidence, it is unavoidable that the jury will hear that Mr. Creech was in the L.A. County

Jail in the late summer and autumn of 2012." But he contends that "[h]is status as a murder suspect is not relevant to any of the facts or elements in this case and is extremely prejudicial," "[t]here is no reason to play any portion of a jail call where the murder investigation is referenced," and "[t]o save time and avoid prejudice, only portions of the jail calls that do not refer to the murder investigation should be played."

## II.

Evidence of a defendant's criminal conduct other than the offense charged generally is not admissible to show that the defendant has a general disposition to commit crimes. *United States v. Jackson*, 918 F.3d 467, 483 (6th Cir. 2019); *see also* Fed. R. Evid. 404(a) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). However, when the evidence is admissible for another purpose, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," it may be received if its probative value on the allowable purpose does not substantially outweigh the danger of unfair prejudice. *Jackson*, 918 F.3d at 483 (quoting Fed. R. Evid. 404(b)); *see also* Fed. R. Evid. 403. This catalog of permissible purposes is sometimes referred to as "exceptions" to the general prohibition against admitting other-acts evidence to prove a defendant's character as circumstantial evidence of conduct, because the evidence has a different purpose. *See United States v. Foster*, 376 F.3d 577, 591 (6th Cir. 2004). The list, however, was not intended to be exclusive. *Ibid.* (citing *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000)); *see also United States v. Blankenship,* 775 F.2d 735, 739 (6th Cir. 1985).

Courts generally employ a series of analytical steps when other acts evidence is offered and challenged. Initially, the proponent must offer enough evidence to establish "as a matter of

preliminary fact" that the other act actually occurred. *United States v. Gessa*, 971 F.2d 1257, 1261 (6th Cir. 1992); *see also* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). Then, as with nearly all evidentiary issues, the next task is to identify the purpose for which the evidence is offered; and the burden of identifying a permissible purpose falls to the proponent of the evidence. *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996) ("Upon objection by the defendant, the proponent of the evidence, usually the government, should be required to identify the *specific* purpose or purposes for which the government offers the evidence of "other crimes, wrongs, or acts."). The proponent then must show that the stated purpose is "material," "that is, whether it is 'in issue' in the case." *Id.* at 1077. Sometimes, the answer to that question is not readily apparent when the trial begins. *Ibid.* ("It is true that whether 404(b) evidence is admissible for a particular purpose will sometimes be unclear until late in the trial because whether a fact is 'in issue' often depends on the defendant's theory and the proofs as they develop."). Finally, "if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect." *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003).

## A. Conduct Within the Charged Timeframe

The government wants to introduce evidence that "during the approximate timeframe of the conspiracy as charged [the] defendant 'fronted' and provided drugs to Todd and other individuals on a consignment basis with the intention to later collect and receive the proceeds from the sale of those drugs." Its avowed purpose is to prove the existence of the conspiracy, and to establish the background and development of the conspiracy between the defendant, Todd, and (presumably) unnamed other co-conspirators.

One of the unlisted but recognized "exceptions" under Rule 404(b) is evidence that describes the "background" circumstances that led to the commission of the crime. *United States v. Brown*, 888 F.3d 829, 836 (6th Cir. 2018) (describing an "exception to Rule 404(b) for . . . evidence [that] 'consis[ts] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.'" *Ibid.* (quoting *United States v. Olds*, 309 F. App'x 967, 974 (6th Cir. 2009)). As the court explained, "[t]ypically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). But this "exception" "imposes severe limitations in terms of the temporal proximity, causal relationship, or spatial connections that must exist between the other acts and the charged offense." *Ibid.* It "cannot be broadly applied to completing a story but must specifically involve past acts that establish a close connection." *Brown*, 888 F.3d at 838.

The evidence that the defendant fronted drugs to Todd during the limitations period is proper background evidence because it tends to prove a material point: it is "directly probative of the charged offense" or concerns matters that "[arose] from the same events as the charged offense." *Brown*, 888 F.3d at 836 (quoting *Hardy*, 228 F.3d at 748). Although the testimony is not described in any excess of detail, it also likely will form "'an integral part of a witness's testimony, or complete[] the story of the charged offense.'" *Ibid.*

The evidence likely will be probative of the charged conspiracy. The Sixth Circuit has approved of the admission of testimony concerning other dealings associated with the charged conspiracy, to establish the background and development of the specific conspiracy charged. *See Hardy*, 228 F.3d 745, 748-49 (6th Cir. 2000) (citing *United States v. Buchanan*, 213 F.3d 302 (6th

Cir. 2000)).  Evidence that "concern[s] events that took place within the alleged time frame of the conspiracy" is considered "typical of the evidence needed to prove the very existence of the charged conspiracy."  *Ibid.*

The Sixth Circuit has affirmed the admission of evidence about prior related dealings between the same conspirators within up to one year before the charged conspiracy began.  *Hardy*, 228 F.3d at 748 (6th Cir. 2000) ("In [*United States v. Passarella*, 788 F.2d 377 (6th Cir. 1986)], the testimony under scrutiny concerned drug deals that took place sometime in 1979.  The counterfeiting offenses charged in the indictment in that case were alleged to have begun on or before February 1980.").  In *Passarella* the court held that the "testimony concerning prior drug transactions between Passarella and Parsons, and Passarella and Hudson, was admissible under Rule 404(b) for the legitimate purpose of proving the existence of a larger continuing plan, scheme or conspiracy, of which the present crime on trial is a part," because it "showed that there was an ongoing plan or scheme involving Passarella and others to engage in crimes which were the subject of the indictment," and was "relevant to both the existence and the continuing nature of the conspiracy."  *Ibid.* (quotations omitted)

For the same reasons, the evidence that "Defendant Creech and Todd engaged in other drug activity, including meeting with yet other drug traffickers to whom Defendant Creech introduced Todd for the purpose of Todd obtaining drugs on a consignment basis, significantly including a face-to-face meeting in the weeks surrounding the charged conspiracy that ultimately led to Todd's own arrest and cocaine-related drug conviction" also is admissible, assuming that it concerns activity either within or immediately preceding the limitations period, to establish the development and execution of the charged conspiracy.

Evidence that the defendant engaged in efforts between May 2012 and November 2012 to collect drug debts from Todd is admissible for similar reasons, because the conduct bears a close temporal and causal connection to the principal affairs of the conspiracy, where the conduct involved the same parties and occurred within the charged timeframe, and where attempts to collect debts owed as a result of the drug transactions were intended to advance the defendant's ultimate goal of profiting from the drug sales. *United States v. Jackson*, No. 17-3896, 2019 WL 1122274, at *9 (6th Cir. Mar. 12, 2019) (affirming admission of testimony by a police officer about his "relationship with Defendants, Defendants' positions in [the] HF Broadway [gang], their roles in the carjackings, and the purpose of the carjackings" as pertinent to establish the motive of securing cars to use in drive-by shooting attacks on a rival gang).

The defendant's main objection to all of this evidence appears to be that he wants to limit (to some unspecified extent) the "depth" of the discussion. He does not, however, articulate any legal authority for such a limitation on evidence that directly concerns the initiation and development of the charged conspiracy. He also objects to evidence of dealings with anyone other than Todd, but the indictment charges him with conspiring both with Todd and with unnamed others. Therefore, the dealings in question are principiant to the charged conspiracy if they concern the defendant's drug deals with unindicted co-conspirators besides Todd.

The defendant has not identified with any specificity the unfair prejudice that could result from the introduction of this evidence, and has not shown how the probative value of this evidence is substantially outweighed by unfair prejudice.

### B. Conduct Outside the Charged Timeframe

The government has not established the requisite close temporal or causal connection to justify admission of other evidence that "as far back as occasions in 2008 and 2009, on multiple

prior occasions, including occasions specific to Todd, defendant 'fronted' and provided drugs to Todd and other individuals on a consignment basis with the intention to later collect and receive the proceeds from the sale of those drugs," or evidence of "statements by defendant and [his] efforts . . . to collect money from Todd and others prior to the charged timeframe of the instant conspiracy for drugs that defendant had previously 'fronted' and provided on consignment." The government contends that it should be allowed to show that Creech and Todd engaged in a 2009 consignment sale transaction in which Creech traveled from California to Detroit to deliver drugs to Todd for sale, and that they discussed an ongoing relationship involving similar transactions.

The government identifies this evidence as additional "background" circumstances that led to the charged conspiracy. Notwithstanding the purported similarity of the transaction and identity of the parties involved, the Sixth Circuit generally has taken a dim view of the admission of other similar crimes which are so remote in time as "background evidence." *See United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015) ("[E]vidence of separate bad acts occurring on a subsequent date, much later in the timeline relevant to the charged offense, will rarely constitute background evidence."). In fact, the similarity of the transactions and the identity of the parties are factors against admission, because the invitation to the jury to convict the defendant of the present conspiracy based on his involvement in prior similar acts is especially acute, and the government has not otherwise attempted to defend the admission of the 2009 transaction except via the "background evidence exception," which the Sixth Circuit applies with exceptional rigor, demanding a very close causal or temporal connection to be shown before it may be invoked. No such intimate connection has been shown here. *See Hardy*, 228 F.3d at 749-50 ("This testimony was not necessary to explain the charged offense, complete the story of Gill's testimony, nor did

it tend to establish the charged conspiracy itself. Thus, the trial court erred in admitting Gill's testimony as background evidence.").

The Court will deny the government's motion to admit evidence of (1) dealings with Craig Todd in 2008 or 2009 and at other times before May 2012, and (2) dealings with other unnamed persons at any time before May 2012.

### C. Defendant's Involvement in an Unrelated Murder

The defendant does not object to the evidence about a 2010 California drug conviction or his 2012 jail stay, or any discussions that took place while he was in jail in 2012, except those portions of the conversations relating to an unspecified murder.

The government contends that it should be allowed to introduce evidence that Creech committed a homicide for which he was a suspect during the time when he contends that he was working on behalf of law enforcement by conducting "undercover" drug sales. The government asserts that the status as a homicide suspect is pertinent to rebut Creech's now-withdrawn public authority defense, because, even assuming that at some point Creech had a cooperative relationship with law enforcement, that relationship would have terminated as soon as the police learned information suggesting to them that he had committed a homicide. The government has not identified any details of the murder, such as who was killed or when. But it appears to be undisputed that Creech later was convicted of the killing. The government also apparently only intends to introduce proofs about the murder as impeachment evidence if Creech elects to testify, because it does not mount any argument for admission of the evidence in its case in chief, and defends it solely on the basis that, as impeachment evidence, it is "extremely unlikely" to be unduly prejudicial if used to rebut the public authority affirmative defense.

According to the latest revelation by the defense, it will offer evidence that Creech was working with the California police to set up "sham" drug transactions with Todd in Michigan only

to negate an intent to enter into an illegal agreement to distribute heroin. The government insists that a proper purpose for the homicide evidence remains, in that it would be less likely that the police would be willing to work with a confidential informant who was a homicide suspect.

For that purpose, the evidence is probative, but only marginally so since Creech has withdrawn his pubic authority defense. Moreover, the government has not offered any facts to suggest that the homicide was in any way connected to or in furtherance of the charged conspiracy, and it does not even state who was murdered, or when. Nor has it explained how the murder plausibly could illustrate any plan, intent, or motive relating to the drug conspiracy. The Sixth Circuit has condemned the admission of such evidence alluding to a defendant's remote violent acts, where there was no temporal or causal connection with the crime charged. *United States v. Brown*, 888 F.3d 829, 838 (6th Cir. 2018) ("The crime at issue was defendant's possession of the gun, and references to him being violent in the past or having a history of domestic violence were not necessary or integral to telling the story of what occurred in the early morning on December 25, 2015.").

The unfair prejudice resulting from evidence that the defendant was a homicide suspect is substantial. The concept of unfair prejudice "embraces two distinct notions." *Dresser v. Cradle of Hope Adoption Ctr., Inc.,* 421 F. Supp. 2d 1024, 1030 (E.D. Mich. 2006). "First, when the evidence may tend to prove more than one proposition and thus could be considered for both a proper and an improper purpose, unfair prejudice can result when the improper purpose overwhelms or substantially overshadows any legitimate basis for receiving the evidence." *Ibid.* (citations omitted). Here, the evidence could be —and likely would be — considered by the jury as proof of the defendant's bad character. As noted earlier, evidence of a defendant's general criminal disposition is not admissible to prove conduct. "Second, unfair prejudice can result when

evidence that is only marginally probative tends to be given preemptive weight by the jury substantially out of proportion to its logical force." *Ibid.* (citing *Sutkiewicz v. Monroe Cnty. Sheriff,* 110 F.3d 352, 360 (6th Cir. 1997) (stating that "[o]therwise relevant evidence may permissibly be excluded if it serves to inflame the passions of the jury"). If the jury hears that the defendant has murder in his background, the distraction from the main issues in the case — the defendant's intent to enter into an agreement with Todd or others "unknown to the grand jury" — could not be cured with a limiting instruction. *See Old Chief v. United States,* 519 U.S. 172, 180 (1997) (quoting Advisory Committee's Notes on Fed. R. Evid. 403).

The government, therefore, will not be permitted to offer evidence that Creech was a homicide suspect.

III.

Accordingly, it is **ORDERED** that the government's motion for admission of certain evidence under Rule 404(b) (ECF No. 40) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the government may offer evidence that (1) that during the approximate timeframe of the conspiracy as charged, on multiple prior occasions, the defendant "fronted" and provided drugs to Craig Todd and other individuals on a consignment basis with the intention to later collect and receive the proceeds from the sale of those drugs; (2) that in furtherance of their drug trafficking relationship and as a means of further developing trust with one another as drug co-conspirators, Creech and Todd engaged in other drug activity during the timeframe of the charged conspiracy, including meeting with yet other drug traffickers to whom Creech introduced Todd for the purpose of Todd obtaining drugs on a consignment basis, including a face-to-face meeting in the weeks surrounding the charged conspiracy that ultimately led to Todd's own arrest and cocaine-related drug conviction; and (3) that in 2012 the defendant was

detained in custody, in a Los Angeles County jail, based on a 2010 California state drug arrest during a significant portion of the time that defendant was attempting to collect money from Todd during the charged timeframe, which will include recorded "jail calls" and "jail visits" with individuals whom the defendant solicited to help collect Todd's drug debt, and during those calls and visits the defendant discussed his underlying drug arrest.

It is further **ORDERED** that the government may not offer evidence (1) of the defendant's drug-related activity with Todd or anyone else outside the approximate timeframe of the conspiracy as charged, including dealings with Craig Todd in 2008 or 2009 and at other times before May 2012, and dealings with other unnamed persons at any time before May 2012, or; (2) that Creech was a homicide suspect, or charged or convicted of homicide.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   May 3, 2019

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on May 3, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

</div>